UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHANELLE CURRENT                                    CIVIL ACTION

VERSUS                                             NO. 08-4963

MICHAEL J. ASTRUE, COMMISSIONER                    SECTION "D" (2)
OF SOCIAL SECURITY ADMINISTRATION

## ORDER ON MOTION, AND FINDINGS AND RECOMMENDATION

Plaintiff, Chanelle Current, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") and supplemental security income benefits ("SSI") under

Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter

was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and

Local Rule 73.2E(B).

## I.    PROCEDURAL HISTORY

Current filed applications for DIB and SSI on September 7, 2005, alleging

disability since August 4, 2005, due to degenerative disk disease, pain in her back, feet

and hands, depression and bad headaches.  (Tr. 78, 88, 104, 113-14).   After her

applications were denied, she requested a hearing before an Administrative Law Judge

("ALJ"), which was held on March 7, 2007.  (Tr. 213-34).  On June 29, 2007, the ALJ

issued a decision denying plaintiff's applications. (Tr. 11-20). After the Appeals Council denied review on October 28, 2008, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 4-7).

II.     STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.      The ALJ erred by failing to find that plaintiff's impairments meet Listing 11.09 for multiple sclerosis.

B.      The ALJ erred by finding that plaintiff's white matter disease is not suggestive of multiple sclerosis.

In addition, plaintiff has attached new evidence to her memorandum. Record Doc. No. 17, Plaintiff's Exh. A. She contends that this allegedly new and material evidence warrants a remand to the Commissioner for consideration. The court treats this as a motion for leave to submit new evidence, which is DENIED for the reasons stated below.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.      Plaintiff has severe impairments of degenerative disc disease, depression and headaches.

2.      Her impairment or combination of impairments do not meet or equal any listed impairments found at 20 CFR, Part 404, Subpart P, Appendix 1. The ALJ specifically considered Sections 1.00 (musculoskeletal disorders), 11.00 (neurological disorders) and 12.00 (mental disorders) of the Listings.

2

3.     Current has the residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally, and to sit, stand and/or walk for six hours in an eight-hour work day. She cannot climb ropes or ladders. She can occasionally climb ramps or stairs, stoop, crouch, crawl, kneel and balance. She needs simple one-, two- or three-step instructions and repetitive tasks.

4.     Although plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible.

5.     Current can perform her past relevant work as a porter or janitor at the light exertional level, as well as other jobs of housekeeper and food preparation at the light level and cashier at the sedentary level, which are available in significant numbers in the national economy.

(Tr. 13-19).

## IV.    ANALYSIS

### A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971);

Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations

_____

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2007). The regulations

include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920;

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled. Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry. If

she successfully carries this burden, the burden shifts to the Commissioner to show that

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.    Factual Background

Current testified that she was 43 years old and had finished the twelfth grade. (Tr. 217). She stated that she was working as a "floor tech" or porter in June 2004 and as an assistant housekeeping supervisor. She said her job involved stripping, mopping and waxing the floors, and throwing out garbage. She stated that she had been in that job for ten years when she began having problems with her back and stopped working in June 2004. (Tr. 218). She testified that she returned to work in a less strenuous porter's job about one year later and worked for about three months, but her pain was so consistent that she could not work. (Tr. 218-19). She said the job of porter included a lot of walking and standing during most of the day.

Plaintiff stated that she has severe, throbbing, needle-like pain and muscle spasms in her lower back and that she cannot bend over. (Tr. 219). She testified that she is treated at University Hospital and that she takes Celebrex,[3] Valium[4] and Toprol.[5] She said she used to take Neurontin,[6] but now takes Celebrex instead. She stated that the medications do not relieve her back pain. She rated her daily pain at ten on a scale of one to ten, with ten being the most severe. Current said that her doctor had recommended surgery, but also told her that it would not change anything. She stated that the doctor said it was unknown whether plaintiff's back pain might get better or worse with surgery. She said her doctor did not want to perform surgery in any case because "they" did not have a neurosurgeon. (Tr. 220).

Current testified that she has chronic headaches, which feel like sharp needles or shooting pains in her forehead or the back of her head. She said the pain is not always

[3]Celebrex (generic name: celecoxib) is a nonsteroidal, anti-inflammatory drug with analgesic effects, which is indicated for the treatment of osteoarthritis and rheumatoid arthritis and for the management of acute pain. Physicians' Desk Reference 3096-97 (56th ed. 2002).

[4]Valium (generic name: diazepam) is indicated for the treatment of treat anxiety disorders and for the short-term relief of anxiety. It is also used to treat the symptoms of sudden alcohol withdrawal, muscle spasms and seizures. Id. at 2957.

[5]Toprol is a beta blocker used to treat hypertension. Id. at 632-33.

[6]Neurontin (generic name: gabapentin) is used to treat post-herpetic (shingles) nerve pain and to treat partial seizures in patients with epilepsy. Id. at 2590; http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Neu1289.html&contentName= Neurontin&contentId=379 (last visited Sept. 1, 2009).

in the same place. She stated that she was told at one time that she was having little strokes, but she said her doctor never clarified that. She said she has very painful headaches two or three times a week, which last from five to fifteen minutes. (Tr. 221). She testified that the medication she takes for her headaches makes her sleep most of the day. Plaintiff stated that, if her head or back is bothering her and she takes medication, she goes to sleep. She said her doctors told her that she might have multiple sclerosis. She testified that she does not really understand what they told her, but it was something about the white matter and the arteries in her head.

Plaintiff testified that she is being treated for depression and impulse control disorder. (Tr. 222). As for depression, she said that she stays inside all the time, has no friends and cries often. She said she is very "down" about her situation because she was used to doing things for herself, working and having her own home. She stated that she has not been able to do anything since she became ill and that her depression started after her back injury. She said she lives with her mother, does not do any household chores and basically spends her days lying down. (Tr. 223). She testified that she has problems

sleeping because of pain and that, if she does not take Paxil[7] or Cerequil[8] at night, she only gets about two hours of sleep.

Current said she has no hobbies, outside interests or social activities. She stated that, before her back became painful, she played basketball, washed cars and went to the movies. She testified that she can only stand for about 15 to 30 minutes at a time and probably could stand for only 45 to 60 minutes total in an 8-hour day. (Tr. 224). She said she can walk about one block and can lift a 10-pound gallon of milk. She stated that she can only sit for about 15 minutes at a time, would only be able to sit for 15 to 30 minutes total in an 8-hour day and must shift from side to side because of her back. She said that she lies down during most of the day. (Tr. 225).

Plaintiff testified that she cannot work because of the pain and that she would work if she could do the things that she used to be able to do. (Tr. 225-26). She said she stopped working at the job she held for ten years because she became ill and had a hysterectomy. She stated that she was fired after her surgery because she could no longer perform her job duties and that she received unemployment after being fired. (Tr. 226).

---

[7]Paxil (generic name: paroxetine hydrochloride) is a psychotropic drug used to treat major depressive disorder, obsessive compulsive disorder, panic disorder, social anxiety disorder, generalized anxiety disorder, and post-traumatic stress disorder. Physicians' Desk Reference at 1585-86.

[8]Probably should be Seroquel. Seroquel (generic name: quetiapine fumarate) is a psychotropic drug prescribed for the treatment of schizophrenia or for the short-term treatment of the acute manic symptoms associated with bipolar I disorder. Id. at 662-63.

She testified that the next job she had was as a porter at Boomtown Casino, but she stopped working in August 2005 because of Hurricane Katrina. However, she said she would not have continued to work even if the hurricane had not hit New Orleans. (Tr. 227). She stated that she tried to return to work in May 2006 as a stock person in the frozen meat department at Wal-Mart, but she only worked for two or three weeks before she was fired because she could not perform the job duties. (Tr. 227-28).

Current said she had no income, owns no property, has not taken any trips since August 2005 and has had no trouble with the police or the law in the last ten years. She stated that she does not watch much television while she is lying down and that she mostly sleeps when she is taking her medications. (Tr. 228-29).

Plaintiff testified that she received $98 per week in disaster unemployment benefits after Hurricane Katrina. She could not recall how long she received benefits, but thought it was six to twelve months. She stated that her sister lives with her and her mother, and that her sister works. She said that she does not take care of her mother.

Current said that she could not perform the porter job at Boomtown Casino because she could not stand. She said she has pain from the waist down to her feet. She stated that she suffered every day, but she was trying to work. She testified that she thought she was having pain as a result of her hysterectomy so she tried to go back to work, thinking that it would loosen up. She stated that being on her feet for eight hours

caused pain from the waist down and that she eventually would have had to stop working at that job, even if the hurricane had not hit. (Tr. 229).

Plaintiff said she was not required to seek work while she was receiving disaster unemployment benefits. (Tr. 229-30). She confirmed that she lifted more than 10 pounds in her job as a porter in a nursing home. (Tr. 231).

C.    <u>Vocational Expert Testimony</u>

A vocational expert, Edward Ryan, testified at the hearing. He testified that porter or janitorial work in a nursing home or casino is classified as unskilled work at the medium exertional level. (Tr. 230).

The ALJ posed a hypothetical of an individual with the same age and education as plaintiff. The hypothetical individual could lift 20 pounds occasionally or 10 pounds frequently and can sit, stand and/or walk for six hours out of an eight-hour day. She cannot climb any ropes or ladders, but can occasionally balance, stoop, kneel, crouch and crawl. She is able to understand, remember and follow one-, two- and three-step instructions and to complete repetitive tasks. (Tr. 231). Ryan stated that the hypothetical claimant could perform janitorial or porter work at the light exertional level and could also work as a housekeeper, maid, food preparation or service person at the light level, and as a cashier at either the sedentary or light level. (Tr. 232).

The ALJ posed a second hypothetical of an individual with the same mental or non-exertional limits who was limited to sedentary work, but could not sustain an 8-hour day or 40-hour week. Ryan testified that there would be no jobs for a person who could not sustain a full day of work. (Tr. 232).

Upon cross-examination by plaintiff's attorney, Ryan testified that a person who suffers from marked impairment in concentration and was frequently absent from the job because of frequent headaches and chronic pain would not be able to maintain any of the jobs he had mentioned. (Tr. 233).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 14-15, 17-18). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    Plaintiff's motion to submit new evidence is denied.

Plaintiff attached to her memorandum an exhibit that is not in the administrative record, which she contends supports her diagnosis of multiple sclerosis and her argument that she meets the listing for multiple sclerosis. The exhibit is a one-page letter dated October 21, 2008 from Charlotte Hutton, M.D., a psychiatrist. Record Doc. No. 17 at

p. 10, Plaintiff's Exh. A. The court treats this portion of plaintiff's memorandum as a motion for leave to submit new evidence.

This court may not issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989). The court may remand for consideration of new evidence only upon a showing that the evidence is new and material and that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Garson v. Barnhart, 162 Fed. Appx. 301, 2006 WL 73365, at *2 (5th Cir. 2006) (citing Leggett v. Chater, 67 F.3d 558, 567 (5th Cir. 1995)). "'In addition, the new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling.'" Id. (quoting Leggett, 67 F.3d at 567).

"New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, and whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (emphasis added).

Dr. Hutton stated that she met with Current twice and reviewed documentation of an MRI of plaintiff's brain, which "shows demyelinating neurological changes suggestive of Multiple Sclerosis." Dr. Hutton noted that plaintiff had an "atypical presentation" and that "mood disorders associated with multiple sclerosis is an unusual condition." Nonetheless, her impression was "that Ms. Current has Bipolar Disorder secondary to multiple sclerosis." She further opined that plaintiff "is unable to work for the next 12 months." Record Doc. No. 17 at p. 10, Plaintiff's Exh. A (emphasis added).

Current has failed to show that Dr. Hutton's report is material, as defined by the Fifth Circuit. First, the relevant time period for establishing disability is from plaintiff's alleged disability onset date of August 4, 2005, through June 29, 2007, the date of the ALJ's decision. Dr. Hutton's letter is dated October 21, 2008, more than three years after the alleged onset date and fifteen months after the ALJ's decision. Dr. Hutton stated in the letter that Current "is unable to work for the next 12 months." Id. (emphasis added). Dr. Hutton did not opine concerning plaintiff's functional capacity during the relevant time period. Because her report does not relate to the period for which benefits were denied, it is immaterial. Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001) (citing Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)).

"Moreover, there is nothing in the record to suggest that MS [multiple sclerosis] is the type of condition that follows a well-known progression so that a date of disability

can be inferred after the fact without contemporaneous corroboration." Cohen v. Astrue, 258 Fed. Appx. 20, 2007 WL 4437229, at *8 (7th Cir. 2007) (citing Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006)). My review of the record reveals that no physician definitively diagnosed or treated plaintiff for multiple sclerosis during the relevant time period. Dr. Hutton's report may be evidence that plaintiff's condition has deteriorated since the ALJ's decision. If Current has evidence that multiple sclerosis or any other severe impairments became disabling after the ALJ's decision, she can use the evidence to apply for benefits for the appropriate period. Falco, 27 F.3d at 164 n.20.

In addition, contrary to plaintiff's argument, Dr. Hutton does not qualify as her treating physician. The Fifth Circuit has held that a physician who examined the plaintiff only three times (which is once more than Dr. Hutton saw Current) is not a treating physician as defined by the Commissioner's regulations. Hernandez v. Astrue, 278 Fed. Appx. 333, 2008 WL 2037273, at *6 n.4 (5th Cir. May 13, 2008) (citing 20 C.F.R. § 404.1502). Thus, the ALJ in Hernandez did not err by failing to give that doctor's opinion the controlling weight usually accorded to a treating physician's opinion. Id. Similarly, Dr. Hutton's opinion, even if it concerned the relevant time period, would not receive controlling weight in the instant case.

For these reasons, Current has not demonstrated a reasonable probability that Dr. Hutton's report would change the outcome of the Commissioner's decision.

Moreover, Current has not shown good cause for her failure to submit this or similar evidence into the record at the administrative level. She has submitted no explanation, much less a "proper explanation," why she could not obtain and submit an evaluation from Dr. Hutton or another physician either before the ALJ's decision or before the Appeals Council denied review on October 28, 2008. Leggett, 67 F.3d at 567; Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989). According to Dr. Hutton's letter dated October 21, 2008, she saw plaintiff twice during 2008.[9] Current could have submitted records of those visits and/or Dr. Hutton's letter to the Appeals Council.

A medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand." Leggett, 67 F.3d at 567. As in Leggett, Current

> does not provide a satisfactory explanation for its absence from the initial proceedings. The evidence consists of a new examination taken far outside of the period in which [Current] applied for or was denied benefits. [Current] offers no evidence that [her] current mental [and physical] disability did not subsequently develop after [her] initial application or that it is not the result of the deterioration of a condition that was not previously disabling.

Id. Thus, plaintiff fails to carry her burden of providing good cause for the absence of this evidence and may not use the evidence as the basis for a remand.

---

[9]Although Dr. Hutton does not state when she saw plaintiff, plaintiff admits in her memorandum that she did not see Dr. Hutton in 2007. Record Doc. No. 17 at p. 3.

Accordingly, plaintiff's motion for leave to submit new evidence is denied. The court will not consider the proffered new evidence. For the same reasons, I do <u>not</u> recommend that the case be remanded so that the Commissioner may consider this immaterial evidence.

        2.      The ALJ did not err by failing to find that plaintiff's impairments meet Listing 11.09 for multiple sclerosis.

At step three of the sequential evaluation, the ALJ found that plaintiff's impairment or combination of impairments do not meet or equal any listed impairments found at 20 CFR, Part 404, Subpart P, Appendix 1. The ALJ specifically considered Section 11.00 for neurological disorders, but found that the required criteria for the listings were not in the record. (Tr. 15-16). Current argues that the ALJ erred by failing to find that her impairments meet Listing 11.09 for multiple sclerosis.

Whether an impairment or combination of impairments meets or is equivalent to a listing is a medical question that can be answered <u>only</u> by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); <u>Ellison v. Sullivan</u>, 929 F.2d 534, 536 (10th Cir. 1990); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990); <u>Deters v. Secretary of Health, Educ. & Welfare</u>, 789 F.2d 1181, 1186 (5th Cir. 1986); <u>McKnight v. Astrue</u>, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008) (Hayes, M.J.), <u>report & recommendation adopted</u>, 2008 WL 5746939 (W.D. La. Sept. 23, 2008) (James, J.),

aff'd, No. 08-31150, 2009 WL 1904521 (5th Cir. July 2, 2009). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. Id. (citing Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990); Selders, 914 F.2d at 619-20).

Plaintiff has the burden at this step of the sequential evaluation to submit substantial medical evidence that she meets all the criteria of Listing 11.09. The "documented presence of" multiple sclerosis is a "threshold requirement of the listing." Riepen v. Commissioner of Social Sec., 198 Fed. Appx. 414, 2006 WL 2873376, at *2 & n.4 (6th Cir. 2006) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(E)). However, my review of the medical records reveals that Current was never definitively diagnosed with or treated for multiple sclerosis.

Radiologist, William Horstman, M.D., interpreted the report of an MRI of plaintiff's brain taken on January 12, 2006. (Tr. 186-87). He stated in the findings section of his report that Current had an abnormal "volume of white matter disease." He noted that "[d]ifferential diagnosis[10] includes white matter disease, such as multiple sclerosis or other demyelinating process," but that "[c]hronic vascular disease is the most common cause of this type of appearance." He listed several "other medical illnesses which might cause early vascular disease," including severe hypertension, chronic

---

[10]Differential diagnosis is "the determination of which one of two or more diseases or conditions a patient is suffering from, by systematically comparing and contrasting their clinical findings." Dorlands Illustrated Medical Dictionary 490 (29th ed. 2000) (hereinafter "Dorlands").

migraine headaches and rheumatological disease, as possible explanations for plaintiff's white matter disease.

Current's medical records reveal that she was being treated for hypertension and chronic headaches, and that she complained of joint pain in her hands and feet. (Tr. 134-36). However, there are no records of any treating physician correlating Dr. Horstman's suggestions concerning possible vascular disease with plaintiff's complaints and existing diagnoses.

In the impressions section of his report, Dr. Horstman first noted that plaintiff's white matter disease "is predominantly subcortical." He questioned whether she had any clinical risk factors for vascular disease that would explain this finding. Dr. Horstman's second impression was that "demyelinating disease,[11] such as multiple sclerosis, could potentially give this appearance, although typically that disease gives much more periventricular abnormality, while this is predominantly subcortical in location." His third impression was that the cause of plaintiff's headaches remained uncertain. (Tr. 186-87). Thus, Dr. Horstman did not conclusively diagnose multiple sclerosis, and essentially suggested that more investigation and clinical correlation was needed.

---

[11]Demyelination refers to loss of the myelin sheaths of nerve fibers, which promote the transmission of neural impulses. "Demyelination in later life is a feature of many neurologic disorders . . . ." The Merck Manual of Diagnosis and Therapy 1487 (16th ed. 1992). Multiple sclerosis is the "most prominent" of the "primary demyelinating diseases," but it is not the only one. Id.

Additional evidence that was submitted to the Appeals Council before it denied review included a CT scan of plaintiff's brain taken on July 20, 2007 (Tr. 204-05) and a Medical Source Statement by a non-examining neurologist, Cheryl Rincon, M.D., dated August 16, 2007. (Tr. 206-09). Neither of these physicians diagnosed multiple sclerosis either.

John Arias, M.D., interpreted the July 20, 2007 brain scan. He identified an "ill-defined area of hypoattenuation[12] in the left parietal subcortical white matter" and a "mild left temporal white matter heterogeneity," which "could represent old subcortical infarct,[13] demyelinating disease." He considered it "undetermined" whether these findings had "any acute significance. Acute considerations would include demyelinating disease, post toxic or postinfectious demyelination, or ischemia." He did not render any impression or diagnosis, and instead recommended further MRI evaluation. (Tr. 204-05). Thus, Dr. Arias's report is even less conclusive regarding a possible diagnosis of multiple sclerosis than Dr. Horstman's report had been eighteen months earlier.

Finally, Dr. Rincon reviewed plaintiff's medical records and rendered an opinion on August 16, 2007 of plaintiff's physical ability to do work-related activities. Dr.

---

[12]The prefix "hypo-" means "beneath, under, below normal, or deficient." Id. at 860. Attenuation means "the act of thinning or weakening." Id. at 172.

[13]An infarct is "an area of coagulation necrosis in a tissue due to local ischemia resulting from obstruction of circulation to the area." Id. at 894.

Rincon did not mention any diagnosis of multiple sclerosis or find any limitations based on any diagnosis of multiple sclerosis, white matter disease or other neurological disease. (Tr. 206-09).

In the absence of any diagnosis of multiple sclerosis, Current cannot meet Listing 11.09. However, even if she had a diagnosis, she has not cited any evidence in the record that she met all the criteria of any subparagraph of the listing. In her memorandum, she neither identifies which subparagraph is applicable nor cites specific evidence to support any, much less all, required elements of Listing 11.09.

In addition to a diagnosis of multiple sclerosis, Listing 11.09 requires substantial medical evidence of either:

> A. Disorganization of motor function as described in 11.04B; or
> B. . . . [M]ental impairment as described under the criteria in . . . 12.02; or
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09.

For purposes of meeting Listing 11.09A, disorganization of motor function is described in Section 11.04B as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." Id. § 11.04B. For purposes of meeting Listing 11.09B,

Section 12.02 requires medically documented persistence of psychological or behavioral abnormalities resulting in marked limitations in at least two out of four listed areas of functioning. <u>Id.</u> § 12.02.

As the ALJ's summary of the medical evidence accurately recites, the record does not contain substantial evidence of significant and persistent disorganization of plaintiff's motor functions as described in Section 11.04B; of mental impairment of the severity described in Section 12.02; or of significant and reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process, as required by Listing 11.09C.

Accordingly, this assignment of error lacks merit.

3.      The ALJ did not err by finding that plaintiff's white matter disease is not <u>suggestive of multiple sclerosis.</u>

Current argues that the ALJ erred by finding that her white matter disease is "not suggestive of multiple sclerosis." (Tr. 17). For the same reasons discussed in the preceding section, substantial evidence supports the ALJ's conclusion.

Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ did not err by failing to find that plaintiff's impairments meet Listing 11.09 for multiple sclerosis or by finding that plaintiff's white matter disease is not suggestive of multiple sclerosis.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this <u>  11th  </u> day of September, 2009.

                                        _____

                                        JOSEPH C. WILKINSON, JR.
                                     UNITED STATES MAGISTRATE JUDGE